748 N.E.2d 183 (2001)
195 Ill.2d 408
254 Ill.Dec. 737
In re A.H., a Minor (Patrick T. Murphy, Cook County Public Guardian, Appellant,
v.
D. Jean Ortega-Piron, Appellee).
No. 89418.
Supreme Court of Illinois.
April 19, 2001.
*186 Patrick T. Murphy, Cook County Public Guardian, Chicago (Ron Fritsch, of counsel), for appellant.
James E. Ryan, Attorney General, Springfield (Joel D. Bertocchi, Solicitor General, and Patrick W. Carlson, Assistant Attorney General, Chicago, of counsel), for appellee.
Justice THOMAS delivered the opinion of the court:
This case presents the question of whether the circuit court, juvenile division (hereinafter, circuit court), has jurisdiction to entertain a motion for removal of a minor from temporary foster care pursuant to section 2-10 of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/2-10 (West 1998)). The respondent, A.H., by Patrick T. Murphy, Cook County public guardian, his attorney and guardian ad litem (GAL), presented an oral emergency motion before the juvenile court seeking the removal of A.H. from his temporary foster home. Over the objections of D. Jean Ortega-Piron, guardianship administrator of the Department of Children and Family Services (DCFS), the Cook County State's Attorney, and the foster mother's court-appointed attorney, the juvenile court ordered A.H.'s removal.
The DCFS filed an appeal of the juvenile court's order and the appellate court reversed. It ruled that the juvenile court's finding that A.H.'s removal was a matter of "immediate and urgent necessity" was against the manifest weight of the evidence under section 2-10(2) of the Act (705 ILCS 405/2-10(2) (West 1998)). Since there was no immediate or urgent necessity, the appellate court reasoned, the juvenile court lacked the authority to remove A.H. from his temporary foster home. 312 Ill.App.3d 638, 246 Ill.Dec. 6, 729 N.E.2d 6.
We allowed A.H.'s petition for leave to appeal (177 Ill. 2d R. 315(a)). For the reasons set forth below, we hold that the juvenile court had jurisdiction over the predispositional motion to remove A.H. from his temporary foster placement. In addition, we hold that the juvenile court's finding that it was in the best interests of A.H. to be removed from his temporary foster placement was not against the manifest weight of the evidence. Accordingly, we reverse the judgment of the appellate court.

I. FACTUAL BACKGROUND
On or about October 19, 1998, Linda H., the mother of A.H., age 9, called the DCFS hotline asking that A.H. be removed from her home before she killed him. The next day, the Cook County State's Attorney filed a petition for adjudication of wardship with the juvenile court pursuant to section 2-13 of the Act (705 ILCS 405/2-13 (West 1998)). The petition alleged child abuse and neglect pursuant to section 2-3 of the Act. 705 ILCS 405/2-3(1)(b), (2)(ii) (West 1998). The petition also noted that the minor had been taken into custody on October 19, 1998, and that a temporary custody hearing was set before the juvenile court for October 21, 1998. See 705 ILCS 405/2-9(1) (West 1998).
On October 21, 1998, the juvenile court entered a temporary custody order pursuant *187 to section 2-10 of the Act (705 ILCS 405/2-10 (West 1998)). That order provided that A.H. be removed from Linda H.'s home, and granted temporary custody of A.H. to DCFS, with the right to place him. The court further named the Cook County public defender as attorney for Linda H. and the Cook County public guardian as guardian ad litem for A.H. Later that month, pursuant to the temporary custody order, DCFS placed A.H. in the foster home of Margie B. An adjudicatory hearing on A.H.'s wardship was scheduled for January 19, 1999.
On December 30, 1998, Linda H. again called the DCFS hotline and reported that A.H. had told her that he was being beaten by Margie B.'s 11-year-old grandson, who occasionally visited the home. Linda H. reported that she had observed cuts, welts, bruises, and a swollen left eye on her son. The DCFS recorded the telephone call in a report dated January 5, 1999, and the GAL received the report on January 6, 1999.
Two weeks later, on January 19, 1999, the parties appeared before the juvenile court for the previously scheduled adjudicatory hearing. The hearing began with a "court family conference" in which the juvenile court reviewed the services to be provided to Linda H. In addition, the GAL made an oral emergency motion for the removal of A.H. from his foster home based upon the allegations of physical abuse. The DCFS objected to the GAL's characterization of the motion as an emergency, noting that the incident had occurred almost three weeks prior to the hearing and that the GAL knew of the incident two weeks prior to the hearing. Despite its knowledge of the incident, DCFS argued, the GAL had not presented a motion to remove A.H. from Margie B.'s foster home and had not attempted to initiate any proceeding to remove A.H. under DCFS's service appeal process. DCFS asserted that the court first must determine that there is an emergency before proceeding with a motion to change foster placement. It also objected that the foster parent had not been given notice of the motion as required by the Act. See 705 ILCS 405/1-5(2)(a), 2-9(2) (West 1998). DCFS asked the court to continue the motion to the next day so a petition could be filed and notice given. The juvenile court agreed and continued the motion to the next day.
Later that day, however, and over the objections of DCFS, the court recalled the case to hear testimony from Linda H., A.H.'s mother, based upon the public defender's representation that she was unable to attend the next day due to a work conflict. The court heard the testimony of Linda H. and DCFS caseworker Jonester Edwards. Before Edwards' testimony was completed, the court continued the matter until the next day and ordered DCFS to notify the foster mother, Margie B., of the next day's proceedings. The next day, the hearing reconvened with Margie B. present. The court then recalled Edwards and heard the testimony of the remaining witnesses.

A. The Juvenile Court's Findings
At the close of the testimony, the juvenile court applied the standards set forth for temporary custody hearings in section 2-10 of the Act (705 ILCS 405/2-10 (West 1998)) and In re R.M., 288 Ill.App.3d 811, 224 Ill.Dec. 337, 681 N.E.2d 652 (1997), and found that there was probable cause to believe A.H. was abused or neglected, that there was immediate and urgent necessity to support the removal of A.H. from the foster home, and that reasonable efforts could not prevent or eliminate the necessity of that removal. The court also found that the removal of A.H. from the foster home was "consistent with [his] health, safety and best interests."
*188 The juvenile court based its conclusions primarily on its finding that the foster mother, Margie B., was not a "truth-teller." The court observed that Margie B. did not "look [the court] in the eye during her entire testimony," and concluded that Margie B. could not be trusted to follow any protective plan which might be developed. The court ordered that DCFS remain the appointed temporary custodian of A.H., but also ordered that A.H. be removed from Margie B.'s home. DCFS appealed.

B. The Holding of the Appellate Court
The parties raised essentially the same arguments before the appellate court as they raise in this appeal. First, DCFS argued to the appellate court that, under section 2-10(2) of the Act, the juvenile court may order the removal of a child from a foster home only where there is probable cause to believe the minor is abused or neglected and the matter is of immediate and urgent necessity. DCFS argued that there was no such emergency in this case and, therefore, the juvenile court lacked the authority to side-step the DCFS administrative service appeal process and order A.H. removed from Margie B.'s home. In response, the GAL argued that the language of section 2-10(2) of the Act grants the juvenile court broad authority to select a child's placement, and that the court acted properly in removing A.H. from Margie B.'s home.
The appellate court agreed with DCFS and held that in order for the juvenile court's order to be valid, there must have been probable cause to believe that A.H. was abused, neglected, or dependent, and it must have been a matter of immediate and urgent necessity that he be removed from Margie B.'s foster home. 312 Ill.App.3d at 650, 246 Ill.Dec. 6, 729 N.E.2d 6. The court further held that the juvenile court's finding of immediate and urgent necessity was against the manifest weight of the evidence, as the record showed that there was little chance that Margie B.'s grandson would injure A.H. again. The appellate court noted that Margie B. had entered into a protective plan in which she agreed that if her grandson visited again, there would be direct adult supervision. In addition, both the caseworker Edwards and James Boits, the DCFS child protection investigator, agreed that A.H. was not at risk in the foster home. As a result, the appellate court reversed the juvenile court's order removing A.H. from Margie B.'s home.

II. ANALYSIS

A. Justiciable Matter
Before turning to the specific language of section 2-10 of the Act, we must first address the source of the juvenile court's subject matter jurisdiction over children found abused, neglected, or dependent. Subject matter jurisdiction refers to a court's power both to adjudicate the general question involved and to grant the particular relief requested. In re Estate of Gebis, 186 Ill.2d 188, 192, 237 Ill. Dec. 755, 710 N.E.2d 385 (1999); In re M.M., 156 Ill.2d 53, 64, 189 Ill.Dec. 1, 619 N.E.2d 702 (1993). With limited exceptions, the circuit courts enjoy "original jurisdiction of all justiciable matters." Ill. Const. 1970, art. VI, § 9. We have long held that the legislature may create a justiciable matter by creating rights or duties that have no counterpart in common law or equity. Gebis, 186 Ill.2d at 192, 237 Ill. Dec. 755, 710 N.E.2d 385; M.M., 156 Ill.2d at 65, 189 Ill.Dec. 1, 619 N.E.2d 702; Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504, 128 Ill.2d 155, 165-66, 131 Ill. Dec. 149, 538 N.E.2d 524 (1989). Removal of a child from his parents' care based on a *189 finding of abuse, neglect, or dependency was not known to common law or equity (People v. Piccolo, 275 Ill. 453, 455-56, 114 N.E. 145 (1916)) and, therefore, was not a justiciable matter over which the courts had original jurisdiction (see M.M., 156 Ill.2d at 63-64, 66, 189 Ill.Dec. 1, 619 N.E.2d 702). Through the Juvenile Court Act, however, the legislature conferred jurisdiction on the circuit court over such a matter and thereby created a "justiciable matter." 705 ILCS 405/2-1 (West 1998). Section 2-1 of the Act states that "[p]roceedings may be instituted under the provisions of this Article concerning boys and girls who are abused, neglected or dependent * * *." 705 ILCS 405/2-1 (West 1998). This grant of authority by the legislature is purely statutory and the proceedings and remedies provided by the Act are part of a comprehensive statutory scheme. Piccolo, 275 Ill. at 455-56, 114 N.E. 145.
Because a justiciable matter is statutorily derived, the legislature may define it in such a way as to limit or preclude the circuit court's authority. "When a court's power to act is controlled by statute, the court is governed by the rules of limited jurisdiction" and the court "must proceed within the strictures of the statute * * *." M.M., 156 Ill.2d at 66, 189 Ill.Dec. 1, 619 N.E.2d 702. The court, therefore, has only the subject matter jurisdiction accorded to it by the statute and "[a]ny action taken by the circuit court that exceeds its jurisdiction is void and may be attacked at any time." Gebis, 186 Ill.2d at 193, 237 Ill.Dec. 755, 710 N.E.2d 385. Therefore, we must determine whether the Act confers jurisdiction on the juvenile court to hear motions to remove a minor from his temporary foster placement or whether that action would exceed the jurisdiction of the court and be void.
Both parties agree that the language of the Act confers jurisdiction, in some way, on the juvenile court to hear such requests. Indeed, both parties maintain that the juvenile court and DCFS share some kind of concurrent jurisdiction over such requests pursuant to the Act and the Children and Family Services Act (see 20 ILCS 505/5(o) (West 1998)). The parties differ, however, concerning the extent of that jurisdiction. The GAL argues that the juvenile court has unfettered jurisdiction over all removal and placement issues. DCFS, however, maintains that the juvenile court has jurisdiction over requests for removal only when there exists probable cause of abuse, neglect, or dependency, an immediate and urgent necessity, and where reasonable efforts have been made to prevent or eliminate the necessity of the removal. We find that the juvenile court's jurisdiction over requests for removal of a minor from his temporary foster care derives from the plain language of section 2-10 of the Act.

B. Statutory Framework of the Temporary Custody Hearing
Section 2-10 of the Juvenile Court Act governs the temporary custody hearing, at which the court determines who shall have temporary custody of the child until further hearings to determine whether the child should be adjudged a ward of the court and placed in the permanent custody of someone other than the child's parents. 705 ILCS 405/2-10, 2-18, 2-21 through 2-28 (West 1998). These later hearings are essentially comprised of the "adjudicatory hearing," the "dispositional hearing," and the "permanency hearing." See 705 ILCS 405/2-18, 2-21 through 2-28 (West 1998). Proceedings under the Act are initiated by the filing of a petition for adjudication of wardship with the court pursuant to section 2-13. 705 ILCS 405/2-13 (West 1998).
*190 At the section 2-10 temporary custody hearing, the juvenile court must make a number of determinations with regard to the minor and his temporary custody. First, the court must make a threshold probable cause determination as to whether the minor is abused, neglected, or dependent. 705 ILCS 405/2-10(1), (2) (West 1998). If the court finds no probable cause of abuse, neglect, or dependency, it must release the minor and dismiss the petition. 705 ILCS 405/2-10(1) (West 1998). If, however, the court does find probable cause, it may, consistent with the health, safety, and best interests of the minor, either release the minor to the parents, guardian, or custodian, or "prescribe shelter care" for the minor. 705 ILCS 405/2-10(2) (West 1998). In the event the court decides to prescribe shelter care, it may enter one of two orders consistent with the health, safety, and best interests of the minor: (1) that the minor "be kept in a suitable place designated by the court"; or (2) that the minor be kept "in a shelter care facility designated by the Department of Children and Family Services or a licensed child welfare agency." 705 ILCS 405/2-10(2) (West 1998).
In determining the "health, safety and best interests of the minor to prescribe shelter care," the court must inquire as to whether it is both a "matter of immediate and urgent necessity for the safety and protection of the minor" that he be placed in a shelter care facility, and whether "reasonable efforts have been made * * * to prevent or eliminate the necessity of removal of the minor from his or her home." 705 ILCS 405/2-10(2) (West 1998). This provision modifies the earlier provision allowing the court to prescribe shelter care, designated either by the court or DCFS. In addition, the "reasonable efforts" determination effectuates the general purpose of the Act to "secure for each minor * * * such care and guidance, preferably in his or her own home, as will serve the safety and moral, emotional, mental, and physical welfare of the minor." 705 ILCS 405/1-2(1) (West 1998).
If the court decides to prescribe shelter care, and if it orders that the minor be placed in a shelter care facility of DCFS, the court "shall" appoint DCFS the "temporary custodian" of the minor. 705 ILCS 405/2-10(2) (West 1998). As temporary custodian, DCFS has the ultimate "responsibility of physical possession of [the] minor and the duty to protect, train and discipline him and to provide him with food, shelter, education and ordinary medical care, except as these are limited by residual parental rights and responsibilities and the rights and responsibilities of the guardian of the person, if any." 705 ILCS 405/1-3(9) (West 1998). Pursuant to that responsibility, DCFS selects a temporary placement for the minor with his relatives, in foster care, or in an institutional setting. 89 Ill. Adm. Code § 301.30 (2000). Finally and most significant to this case, "[i]f the minor is ordered placed in a shelter care facility of [DCFS] * * * the court may enter such other orders related to the temporary custody as it deems fit and proper * * *." 705 ILCS 405/2-10(2) (West 1998).

C. The Juvenile Court's Authority
It is clear from the plain language of section 2-10, and from a reading of the Act as a whole, that the legislature has given authority to the juvenile court to remove a minor from the custody of his parents by holding a temporary custody hearing. In this case, however, the court was asked to remove the minor from his temporary foster placement. We hold that such a request also falls under section 2-10 of the Act.
At the outset, it is apparent that the jurisdiction of the juvenile court over *191 the minor is not limited to the entry of the temporary custody order. The plain language of section 2-10(2) demonstrates that the juvenile court retains jurisdiction over the temporary custody, both physical and legal, of the minor and that jurisdiction extends to the minor's temporary foster placement. The source of the court's continuing jurisdiction is found in that portion of section 2-10 which gives the court authority to enter orders "related to" the minor's temporary custody. 705 ILCS 405/2-10(2) (West 1998).
In particular, section 2-10(2) authorizes the court to "enter such other orders related to the temporary custody [of the minor] as it deems fit and proper, including the provision of services to the minor or his family to ameliorate the causes contributing to the finding of probable cause or to the finding of the existence of immediate and urgent necessity." (Emphasis added.) 705 ILCS 405/2-10(2) (West 1998). This court has held that this provision authorizes the juvenile court "to enter orders requiring [DCFS] to provide and pay for in-patient drug treatment services for mothers whose children were removed from their custody due to their mothers' drug-related neglect of them." In re Lawrence, 172 Ill.2d 523, 525, 537, 219 Ill.Dec. 32, 670 N.E.2d 710 (1996). But the term "including" in section 2-10(2) means that the court's jurisdiction to enter "such other orders related to the temporary custody" is not limited to providing ameliorative services. Admittedly, no provision in the Act specifically addresses the particular circumstance before us where the shelter care in which the minor was placed for his protection becomes a threat. We believe, however, that the phrase "such other orders" contemplates the authority to enter an order to remove a minor from his temporary foster care because that order is related to the minor's temporary custody.

D. Procedure and Applicable Standard
Once we have concluded that the juvenile court has jurisdiction to enter orders related to the temporary custody of the minor, we must determine under what circumstances and standard the court may do so. In this case, when the GAL made an oral motion to remove A.H. from his temporary foster placement, the juvenile court conducted what it called a "new form of T[emporary] C[ustody]" hearing. This new temporary custody hearing, however, was improper.
Under section 2-10(2), the court must conduct a temporary custody hearing to remove the minor from the care of his parents, guardian, or custodian. 705 ILCS 405/2-10(2) (West 1998). The court is not directed, however, to conduct a temporary custody hearing when entering an order related to the temporary custody. When the court enters such an order, the determinations of the section 2-10 temporary custody hearing with regard to the removal of the minor from the care of his parents have already been made. The court has already found probable cause of abuse, neglect, or dependency and, if it has prescribed shelter care, it has found an immediate and urgent necessity and reasonable efforts. Section 2-10, therefore, does not direct the court to conduct an entirely new temporary custody hearing, with the attendant temporary custody determinations, merely to enter an order related to the temporary custody.
This raises the question of the standard under which the court may enter such orders. The Act states that the court may enter orders related to the temporary custody "as it deems fit and proper." 705 ILCS 405/2-10(2) (West 1998). The GAL argues that the statute prescribes some type of "suitability" test under which the court does not engage in the probable *192 cause, immediate and urgent, or reasonable efforts determinations. DCFS, on the other hand, argues that the juvenile court must make all three determinations again. The appellate court likewise held that the requirements of probable cause and immediate and urgent necessity apply to the best interests determination. 312 Ill.App.3d at 650, 246 Ill.Dec. 6, 729 N.E.2d 6. We hold that when the court "enters such other orders related to the temporary custody [of the minor] as it deems fit and proper," the court must make a best interests determination, though not of the kind required at the temporary custody hearing.
The Act sets forth no less than 10 factors to consider whenever a best interests determination is required. 705 ILCS 405/1-3(4.05) (West 1998). In the context of the section 2-10 temporary custody hearing, however, that determination takes on two additional considerations:
"In determining the health, safety and best interests of the minor to prescribe shelter care, the court must find that it is a matter of immediate and urgent necessity for the safety and protection of the minor * * * that the minor be placed in a shelter care facility * * * and must further find that reasonable efforts have been made * * * to prevent or eliminate the necessity of removal of the minor from his or her home." 705 ILCS 405/2-10(2) (West 1998).
In other words, when the juvenile court decides to prescribe shelter care in the context of the temporary custody hearing, the best interests determination includes the "immediate and urgent necessity" and the "reasonable efforts" determinations. Indeed, the very fact that the legislature saw fit to specify that, when prescribing shelter care, the best interests determination must include the immediate and urgent and reasonable efforts determinations demonstrates that the best interests determination does not automatically contemplate those considerations.
Therefore, when the juvenile court merely enters an order related to the temporary custody, the court need only engage in the best interests determination as outlined in section 1-3(4.05) of the Act (705 ILCS 405/1-3(4.05) (West 1998)). Under the general best interests determination, the court is not required to consider the immediacy and urgency of the situation or whether reasonable efforts have been made.
The fact that section 2-10(2) requires the court to engage in the immediate and urgent and reasonable efforts considerations when holding a temporary custody hearing, but not when entering other related orders, is logical as a policy matter. To remove a child from the care of his parents and grant temporary custody to someone other than his parents, the court must understandably overcome a higher bar than if the court were merely to remove the child from his temporary foster placement. Under the fourteenth amendment, parents have a "fundamental liberty interest * * * in the care, custody, and management of their child[ren]." Santosky v. Kramer, 455 U.S. 745, 753-54, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599, 606 (1982); In re Enis, 121 Ill.2d 124, 128-29, 117 Ill.Dec. 201, 520 N.E.2d 362 (1988). Foster parents do not share this liberty interest in the children for whom they care. We conclude, therefore, that in the context of an order to remove a minor from his temporary foster placement, the best interests determination does not include considerations of immediate and urgent necessity or reasonable efforts.
In addition, the best interests determination in the context of a motion to remove *193 a minor from his temporary foster placement does not disturb the juvenile court's threshold finding of probable cause. The appellate court mistakenly held that the best interests determination required a renewed finding of probable cause. 312 Ill.App.3d at 650, 246 Ill.Dec. 6, 729 N.E.2d 6. Since the probable cause determination is the first finding the juvenile court must make in order to even exercise jurisdiction over the minor and enter a temporary custody order, the court need not revisit that determination when it merely enters other orders related to the temporary custody.
We hold that on a motion to remove the minor from his temporary foster placement, there is no need to make a new probable cause finding of abuse, neglect, or dependency by the foster parent or new findings of immediate and urgent necessity or reasonable efforts. Rather, in entering "such other orders," the standard is the general best interests standard as set forth in the definitional section 1-3(4.05) of the Act (705 ILCS 405/1-3(4.05) (West 1998)).

E. Procedural Objections to the GAL's Motion
DCFS argues that the GAL failed to give proper notice of its oral motion to the foster mother. DCFS cites In re C.R.H., 163 Ill.2d 263, 206 Ill.Dec. 100, 644 N.E.2d 1153 (1994), for the proposition that due process requires that the "parties" be given notice. That, however, was not our holding in C.R.H. Rather, we held that the failure to give proper notice of juvenile proceedings to the parents and "necessary parties" is a due process violation of the parents' constitutional rights, such that it deprives the circuit court of jurisdiction. C.R.H., 163 Ill.2d at 269, 271, 206 Ill.Dec. 100, 644 N.E.2d 1153. Under the Act, "necessary parties" include the parents or legal guardian, not the foster parent. C.R.H., 163 Ill.2d at 271, 206 Ill. Dec. 100, 644 N.E.2d 1153. Any failure to give proper notice to Margie B., therefore, did not rise to the level of a due process violation.
Even so, the foster parent is entitled to notice under section 1-5(2)(a), which requires that, "[i]n addition to the * * * right to be heard by the court, any current foster parent * * * has the right to and shall be given adequate notice at all stages of any hearing or proceeding under this Act." 705 ILCS 405/1-5(2)(a) (West 1998). Proper notice should have been given to Margie B. This error was harmless, however, for two reasons: first, the issue was waived when Margie B. never objected to a lack of notice during the hearing; and, second, DCFS asked only for a continuation of the hearing to the next day, and Margie B. appeared that day to testify.
In addition, the DCFS complaint that the GAL never bothered to file a written petition for its motion to remove A.H. from his foster placement is likewise unavailing. Presumably, DCFS is referring to the section 2-13 petitions for adjudication of wardship which are required in order to hold temporary custody hearings. 705 ILCS 405/2-13 (West 1998). But as that provision indicates, a petition is required for a temporary custody hearing and to begin the entire adjudicatory process. It is not required for a motion on the court's temporary custody order, and was not required here. Therefore, the GAL's oral motion to remove A.H. from his temporary foster placement was not improper.

F. Best Interests Determination of the Juvenile Court
We must finally determine whether the juvenile court's finding that removing A.H. from his foster placement was in *194 his best interests was against the manifest weight of the evidence. In re N.B., 191 Ill.2d 338, 346, 246 Ill.Dec. 621, 730 N.E.2d 1086 (2000). We hold that the juvenile court's determination was not against the manifest weight of the evidence.
Though the juvenile court mistakenly engaged in the probable cause, immediate and urgent, and reasonable efforts determinations, it also found that removal of A.H. from Margie B.'s home was consistent with his health, safety, and best interests. The court based its conclusion primarily on the fact that it did not find the foster mother, Margie B., to be credible. The court did not believe that she had sufficiently monitored A.H. or that she was honest about the cause of the red puffiness around his left eye. The court also did not believe that Margie B. would comply with the protective plan that investigator Boits had set up so that A.H. would not be subject to abuse by the grandson again. Based on its disbelief of the foster mother, the court concluded that A.H.'s physical safety and welfare were in jeopardy. This is one of the factors the court may consider in making the best interest determination. 705 ILCS 405/1-3(4.05)(a) (West 1998).
The trial court is vested with wide discretion in its determination of the best interests of the minor in temporary custody hearings, which determination will not be disturbed on appeal absent an abuse of discretion or where the judgment is against the manifest weight of the evidence. In re Stilley, 66 Ill.2d 515, 520, 6 Ill.Dec. 873, 363 N.E.2d 820 (1977). The trial court has the opportunity to observe the demeanor and conduct of the parties and witnesses and its credibility determinations must be given great weight. In re A.P., 179 Ill.2d 184, 204, 227 Ill.Dec. 949, 688 N.E.2d 642 (1997); Stilley, 66 Ill.2d at 520, 6 Ill.Dec. 873, 363 N.E.2d 820.
Here, we are mindful that both experts produced by DCFS, investigator Boits and caseworker Edwards, concluded that A.H. was not at risk of physical harm if he continued in the foster care of Margie B. However, the best interests of the minor is a determination for the juvenile court and it is apparent that the court took into consideration the testimony of all the witnesses to reach its conclusion that A.H. should be removed from his foster placement. The court found that Margie B. did not sufficiently protect A.H. from the physical abuse and could not be trusted to abide by the protective plan. We hold, therefore, that the court's conclusion that it was in the health, safety, and best interests of A.H. to remove him from his foster placement with Margie B. was not against the manifest weight of the evidence.

III. CONCLUSION
For all of the foregoing reasons, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.
Appellate court judgment reversed; circuit court judgment affirmed.