**SIXTH DIVISION**
February 4, 2011

No. 1-09-2481

| | | |
|---|---|---|
| *In re* | ) | Appeal from the |
| | ) | Circuit Court of |
| K.D., a Minor | ) | Cook County. |
| | ) | |
| (The Department of Children and Family | ) | No. 09 JD 20007 |
| Services, and D. Jean Ortega-Piron, | ) | |
| Guardianship Administrator of the | ) | |
| Department of Children and Family | ) | |
| Services, | ) | The Honorable |
| | ) | Richard F. Walsh, |
| Appellants). | ) | Judge Presiding. |

PRESIDING JUSTICE GARCIA delivered the judgment of the court, with opinion.

Justice R.E. Gordon concurred in the judgment and opinion.

Justice Cahill dissented, with opinion.

## OPINION

On July 9, 2009, the circuit court appointed the Illinois Department of Children and Family Services (DCFS) as guardian of minor K.D., then age 16, in a delinquency proceeding after making K.D. a ward of the court. DCFS contends the circuit court was without subject matter jurisdiction to enter such an order, rendering the order void. According to DCFS, the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq.* (West 2008)) requires the filing of a neglect petition before a court may appoint DCFS as guardian of a minor at least 15 years of age, in a delinquency proceeding pursuant to section 5-710(1)(a)(iv) of the Act (705 ILCS 405/5-710(1)(a)(iv) (West 2008) ("Kinds of sentencing orders")). Counsel for the minor, supported by the State's

No. 1-09-2481

Attorney of Cook County (County), contends section 5-710(1)(a)(iv), as amended in 2008, confers upon the circuit court authority to determine that "an independent basis of abuse, neglect, or dependency" exists, without strictly adhering to the procedural requirements for neglect petitions in Article II of the Act. We agree with K.D. and the County, and affirm. Based on the language added in 2008, section 5-710(1)(a)(iv) of the Act vested the circuit court with authority to make a finding that K.D. was neglected based on the social investigation report that neither parent could care for him, which provided an independent basis for a neglect finding apart from the facts underlying the delinquency petition. Based on such a finding, the court had authority to place K.D. in the guardianship of DCFS as a condition of his probation.

BACKGROUND

In March 2009, a delinquency petition was filed regarding K.D., who was 16 years old at the time. The petition charged K.D. with 10 counts of delinquency, including aggravated robbery, robbery, aggravated battery, battery, theft, and theft from person. The delinquency petition alleged that in February 2009, K.D. stole an MP3 player, Blackberry device, camera, and credit card after repeatedly kicking and punching the victim in the face. The petition asked that K.D. be made a ward of the court. At his arraignment, K.D. pleaded not guilty. He was ordered to

No. 1-09-2481

abide by a curfew.[1]

In May 2009, K.D. pleaded guilty to one count of felony theft from person and was adjudicated delinquent. K.D. was not taken into custody, but was ordered to have no contact with the victim.

In July 2009, probation officer Nancy Freedman submitted a social investigation report for consideration at the sentencing hearing pursuant to section 5-701 of the Act (705 ILCS 405/5-701 (West 2008) ("Social investigation report")). According to the report, prior to the February 2009 incident, K.D. had several police "station adjustments" for theft and assault, criminal damage to property, consumption of liquor by a minor, and obstruction of justice. The report indicated K.D. had been diagnosed with emotional problems, had a history of alcohol and marijuana abuse, and was a member of a street gang. According to the report, neither of K.D.'s parents, who never married and were no longer a couple, provided for K.D.; nor would the parents be able to provide for him in the foreseeable future as neither parent had a stable living environment. Each parent told the probation officer that K.D. could not live with him or her. In her report, Ms. Freedman noted, "it is not known where K.D. is staying." Ms. Freedman concluded "the Probation Department does not appear to have resources that can meet K.D.'s needs." In her

---

[1] The record does not disclose to whose custody K.D. was released.

3

report, Ms. Freedman suggested that K.D. "possibly *** would be eligible for a hearing before the DCFS Dependency Committee."

On July 6, 2009, K.D. appeared before the court for sentencing on his guilty plea on the February 2009 incident and for an arraignment on a new delinquency petition, charging retail theft of alcohol, to which he pleaded not guilty. K.D.'s father and grandmother were present in court; his mother did not appear. The court asked probation officer Freedman whether she recommended a disposition. Ms. Freedman stated she was constrained because she did not know K.D.'s current living situation as her attempts to locate K.D. following her initial interview with him for the social investigation report were unsuccessful. Ms. Freedman stated she could ask that K.D. be "screened in front of a committee with DCFS. [But] I think that's really a long shot." She opined K.D. appeared to be a danger to himself and others. The assistant State's Attorney and counsel for K.D. noted K.D. had no place to stay, was emotionally unstable, was not attending school, was too young to be living on the streets, and was without any resources. The court ordered K.D. taken into custody and continued the matter for a DCFS representative to be present.

Three days later, on July 9, 2009, a DCFS representative appeared at the court hearing. DCFS noted it appeared with short notice of the hearing and was aware of few facts of the case. DCFS questioned the juvenile court's jurisdiction to place K.D.

4

No. 1-09-2481

in the guardianship of DCFS based on *In re E.F.*, 324 Ill. App. 3d 174, 754 N.E.2d 837 (2001), and *In re A.H.*, 195 Ill. 2d 408, 748 N.E.2d 183 (2001).  DCFS argued the cases stand for the proposition that a petition for adjudication of wardship of a minor under Article II of the Act must be filed before a court may enter a DCFS guardianship order.  The trial judge responded, "The case law isn't [so] clear."  The court observed section 5-710(1)(a)(iv) of the Act had been amended after the cases DCFS cited were decided and noted the time to act regarding K.D. was running short: "[T]he problem is, *** I got a kid that is going to turn 17.  And I know if he does and I haven't sentenced him, you will be right back here saying, ['G]ee, that statute is good law.[']"[2]

The juvenile court then sentenced K.D. to three years' probation on the February 2009 incident.  The juvenile court also found K.D. neglected based on the social investigation report finding that neither parent would allow K.D. to live with him or her and that K.D. had no known residence.  The court declared K.D. "to be a ward of the court because of neglect" and appointed DCFS as K.D.'s guardian.  The court found "[t]he appropriate

---

[2] The parties agree that the court was mistaken in its belief that it had to act before K.D. turned 17, rather than 18, in light of the felony and misdemeanor charges.  See 705 ILCS 405/5-105(3) (West 2008) ("Definitions").

5

services aimed at family preservation or family reunification have been unsuccessful." As a special condition of his probation, the court required K.D. to cooperate with any placement by DCFS.

In its motion to reconsider, DCFS argued that a delinquent minor, following sentencing under section 5-710(1)(a)(iv) of the Act, may only be placed in the guardianship of DCFS in two circumstances: (1) when the minor is under 15 years of age, and (2) for a minor 15 years or older, when a court finds, pursuant to Article II of the Act, that there is an independent basis, other than the minor's delinquency, for finding abuse, neglect, or dependency. Under the second circumstance, subject matter jurisdiction would vest in the juvenile court to permit the entry of a DCFS guardianship order only upon the filing of a neglect petition under Article II of the Act. No such petition was filed regarding K.D.

Counsel for K.D. argued that amended section 5-710(1)(a)(iv) of the Act permitted a juvenile court, in the course of sentencing a minor, to make a finding of neglect, independent of the delinquency allegations, and place him or her in the guardianship of DCFS. K.D.'s counsel argued the sentencing section contained no explicit requirement that a neglect petition be filed to vest the court with subject matter jurisdiction before DCFS may be appointed guardian of a minor. The court took DCFS's motion under consideration.

6

No. 1-09-2481

At the August 10, 2009, hearing, DCFS set out the procedures it believed must be followed to permit a juvenile judge, in a sentencing context, to make a finding of neglect regarding a minor. In denying the motion to reconsider, the court rejected DCFS's contention that the procedures it recited were mandated by law:

> "I don't think I have to wait for [DCFS], and some other judge, to independently make that decision. I can hold a hearing, which I held, and find that he is a dependent, neglected minor. That's what the statute says. And I don't believe that I have to follow some [set] procedure because I don't think that [sentencing] statute incorporates all of the procedural and bureaucratic requirements of [Article] II. It's a sentencing statute and it provides that this is one of the options that a Judge has in sentencing a minor."

DCFS timely appeals the guardianship order of the circuit court and the court's denial of its motion to reconsider.

ANALYSIS

We first note that neither K.D. nor the County challenges DCFS's appeal of the circuit court's guardianship order. "DCFS has standing to appeal the portions of the court's orders

7

pertaining to it because it had a sufficient direct, immediate and substantial interest in the orders' terms. The order required DCFS to assume the responsibility of placing the minor[] in an appropriate residential facility, and its compliance could be enforced by the trial court's contempt power." *In re O.H., L.M., B.M., B.L.*, 329 Ill. App. 3d 254, 257-58, 768 N.E.2d 799 (2002).

Also, we agree with the parties that whether the circuit court had authority under the Act to appoint DCFS as K.D.'s guardian on the basis of neglect where no neglect petition had been first filed is subject to *de novo* review. *In re E.F.*, 324 Ill. App. 3d 174, 176, 754 N.E.2d 837 (2001) (when the scope of the circuit court's authority under the Act is at issue, *de novo* review applies); *In re O.H.*, 329 Ill. App. 3d at 258 ("The standard of review for the construction of a statute is *de novo*.").

DCFS presents two challenges to the circuit court's ruling: (1) the circuit court erred in interpreting section 5-710(1)(a)(iv) as providing subject matter jurisdiction for the order it entered; and (2) the circuit court's interpretation raises constitutional due process concerns *vis-a-vis* the parents of minors similarly situated to K.D. DCFS argues that the juvenile court's interpretation of section 5-710(1)(a)(iv) fails to recognize that a neglect petition is "wholly distinct from, and serves an entirely different purpose than, a delinquency

8

petition."  In the present case, K.D.'s parents only received notice of the filing of delinquency petitions;[3] no neglect petition, which impinges upon parental rights, was ever filed. DCFS argues a court has subject matter jurisdiction to make a finding of neglect only when the procedural requirements set forth in Article II of the Act are followed.  As support for this contention, DCFS quotes the supreme court: "Proceedings under the Act are initiated by the filing of a petition for adjudication of wardship with the court pursuant to section 2-13 [of the Act]." *A.H.*, 195 Ill. 2d at 417 (citing 705 ILCS 405/2-13 (West 1998)). DCFS contends that in the context of this case, section 2-13 of the Act "explicitly" requires the filing of a neglect petition and because no such petition was filed, the juvenile court lacked subject matter jurisdiction to enter a DCFS guardianship order, which rendered its order void.

The County and K.D. filed separate briefs supporting the juvenile court's authority to enter such an order, with all three parties presenting oral argument.  K.D. notes that upon a finding of delinquency under section 5-620 of the Act, a juvenile court has the authority to determine whether the minor should be adjudicated a ward of the court.  705 ILCS 405/5-620 (West 2008) ("Findings").  K.D. argues that the sentencing options available under section 5-710(1)(a)(iv) of the Act with "respect to wards of the court," explicitly authorize the court to place a minor,

_____

[3]  K.D.'s mother was served by publication.

No. 1-09-2481

15 years or older, for whom an independent basis of neglect exists, in the guardianship of DCFS. The court's decision to do so in this case was proper, even in the absence of a neglect petition. In its brief, the County argues "DCFS has inserted a requirement into 705 ILCS 405/5-710(1)(a)(iv) that simply does not exist. Despite DCFS's claims, there [is] no requirement that a neglect petition be filed prior to K.D. being placed in DCFS guardianship as part of his delinquency sentence." Because the County's arguments parallel K.D.'s, we do not address them separately.

The parties primarily rely on cases decided by the Third District for their contrary positions: DCFS relies on *In re E.F.*, 324 Ill. App. 3d 174; K.D. relies on *In re O.H.*, 329 Ill. App. 3d 254. The two cases were authored by different justices; however, each authoring justice was a member of the panel deciding the other case.

                    Subject Matter Jurisdiction

In *E.F.*, two delinquency petitions were filed against the minor, alleging "criminal damage to his father's property and domestic battery against his stepmother." *In re E.F.*, 324 Ill. App. 3d at 175. His stepmother obtained an order of protection, which barred the minor from returning to his father's home, where he was residing. After a finding of delinquency was entered, the guardian *ad litem* urged the county to file a neglect petition to address the temporary custody of the minor; the county urged the

10

No. 1-09-2481

juvenile court to "sentence E.F. to DCFS due to the 'overriding circumstances.' " *In re E.F.*, 324 Ill. App. 3d at 175. "The trial court found that E.F. was neglected [based on abandonment] because the order of protection barred him from his father's house. The court then placed E.F. in the custody of DCFS." *In re E.F.*, 324 Ill. App. 3d at 175.

At the time of sentencing, section 5-710(1)(a)(iv) provided that a delinquent minor may be " 'placed in the guardianship of the Department of Children and Family Services, *but only if the delinquent minor is under 13 years of age*.' " (Emphasis added in decision.) *In re E.F.*, 324 Ill. App. 3d at 176 (quoting 705 ILCS 405/5-710(1)(a)(iv) (West 2000)). E.F. was 16 years of age at the time of sentencing. The Third District held the DCFS guardianship order void. "In the absence of a petition to initiate custody proceedings, the trial court lacked jurisdiction to enter a custody award. A trial court may not exceed its authority under the Act regardless of how beneficial or desirable the result may be." *In re E.F.*, 324 Ill. App. 3d at 177.

Relying on *E.F.*, DCFS asserts that the circuit court below was without subject matter jurisdiction to enter the DCFS guardianship order regarding K.D., who was 16 years of age at the time of sentencing, absent the filing of a neglect petition under Article II of the Act. DCFS asserts the court erred in concluding that *E.F.* is no longer controlling based on the 2008 amendment to the section. According to DCFS, the 2008 amendment

11

made no substantive change to section 5-710(1)(a(iv), except to raise the disqualifying age from 13 to 15. Thus, DCFS argues, the holding in *E.F.* remains good law as it relates to a minor age 16, making it binding on the circuit court in this case. We disagree on both counts.

*Holding of E.F.*

Contrary to the position taken by DCFS, we do not read *E.F.* to hold that the circuit court lacked subject matter jurisdiction because of the absence of a neglect petition; rather, the absence of a neglect petition merely confirmed that the circuit court did not have subject matter jurisdiction to enter the guardianship order. "Subject matter jurisdiction refers to a court's power both to adjudicate the general question involved and to grant the particular relief requested." *In re A.H.*, 195 Ill. 2d at 415. In actuality, the order appointing DCFS as guardian was void because the sentencing statute did not apply to E.F., as he was 16 years of age. The circuit court lacked authority to impose a condition of probation not permitted by the version of section 5-710(1)(a)(iv) in effect at the time. "[T]he Act defines the scope of alternatives available to the circuit courts." *In re E.F.*, 324 Ill. App. 3d at 176.

The 2001 version of section 5-710(1)(a)(iv) expressly limited the circuit court's authority to impose DCFS guardianship to a "delinquent minor *** *under 13 years of age*." (Emphasis added.) 705 ILCS 405/5-710(1)(a)(iv) (West 2000). Had E.F. been

12

No. 1-09-2481

under the age of 13, no neglect petition would have been required for the circuit court to grant the particular relief it did. *E.F.* turned on the age of the minor involved, not the absence of a neglect petition. "[T]he trial court lacked jurisdiction to enter a *custody award*." (Emphasis added.) *In re E.F.*, 324 Ill. App. 3d at 177.

It follows that in 2001, when *E.F.* was decided, a custody award granting DCFS guardianship over minors 13 or older could only follow an adjudication of a neglect petition under Article II, the filing of which E.F.'s guardian *ad litem* urged. *In re E.F.*, 324 Ill. App. 3d at 175. "The [juvenile] court *** has only the subject matter jurisdiction accorded to it by the statute and '[a]ny action taken by the circuit court that exceeds its jurisdiction is void and may be attacked at any time.' " *In re A.H.*, 195 Ill. 2d at 416 (quoting *In re Estate of Gebis*, 186 Ill. 2d 188, 193, 710 N.E.2d 385 (1999)). As the *E.F.* court noted, it was a matter of legislative discretion "to limit courts' ability to award custody of certain minors to DCFS under the Act." *In re E.F.*, 324 Ill. App. 3d at 176.

We agree with the circuit court below: the holding in *E.F.* does not extend beyond the terms of section 5-710(1)(a)(iv) as it existed at the time the case was decided. The version of the section in existence in 2001 only permitted the circuit court to enter a DCFS guardianship order for minors under the age of 13. Likewise, as DCFS acknowledges here, the 2008 version of section

13

5-710(1)(a)(iv) unquestionably permits the circuit court to enter such an order if the delinquent minor is under 15 years of age. 705 ILCS 405/5-710(1)(a)(iv) (West 2008).

The issue remains before us whether section 5-710(1)(a)(iv), as amended in 2008, authorizes the circuit court to enter a DCFS guardianship order for K.D., who was 16 at the time. The grant of authority to the circuit court to act in accordance with the provision of the Act "is purely statutory and the proceedings and remedies provided by the Act are part of a comprehensive statutory scheme." *In re A.H.*, 195 Ill. 2d at 416. While the issue may more accurately be framed as whether the amended section created a "justiciable matter" pertaining to a DCFS guardianship order for a minor 15 years or older arising in a delinquency proceeding, we continue our analysis with the term "subject matter jurisdiction." See *In re M.W.*, 232 Ill. 2d 408, 421-22, 905 N.E.2d 757 (2009) ("once such a matter is created [by legislation], the circuit courts enjoy ' "original jurisdiction of all justiciable matters" ' " (quoting *In re A.H.*, 195 Ill. 2d at 415, quoting Ill. Const. 1970, art. VI, §9)).

*Amended Section 5-710(1)(a)(iv)*

In June 2008, the legislature amended section 5-710(1)(a)(iv) to permit a delinquent minor to be

"placed in the guardianship of [DCFS], but only if the delinquent minor is under 15 years of age or, *pursuant to Article II of*

14

> *this Act, a minor for whom an independent*
> *basis of abuse, neglect, or dependency*
> *exists.* An independent basis exists when the
> allegations or adjudication of abuse,
> neglect, or dependency do not arise from the
> same facts, incident, or circumstances which
> give rise to a charge or adjudication of
> delinquency[.]" (Emphasis added.) 705 ILCS
> 405/5-710(1)(a)(iv) (West 2008).

The circuit court concluded that the added language gave it authority to enter the DCFS guardianship order on the basis of an independent finding of neglect made in the course of a sentencing hearing.

In its reply brief, DCFS contends the 2008 amendment did not broaden the circuit court's discretion regarding a sentencing disposition of a delinquent minor above the disqualifying age; rather, the amendment merely codified the holding in *E.F.*: "[T]he amendment mandates the filing of a neglect petition, just as was required in *E.F.*" We are unpersuaded by the interpretation offered by DCFS.

DCFS fails to provide a reason the legislature acted to "codify" the purported holding in *E.F.* when the court, consistent with the Act, found subject matter jurisdiction lacking for the entry of the DCFS guardianship order for a minor 16 years of age. The purpose behind the 2008 amendment offered by DCFS is

15

doubtful, especially when *E.F.* was decided nearly seven years earlier. It also strikes us as odd that the legislature would seek to "codify" the holding in *E.F.* regarding minors of a certain age, without the use of a simple and unambiguous phrase to the effect that "a neglect petition first be filed." That "this power [to appoint DCFS as guardian of a minor age 15 or older] was suggested elsewhere in the act," as DCFS has argued, is no basis to interpret the language added to section 5-710(1)(a)(iv) in 2008 as without significance.

DCFS nevertheless insists that the 2008 amendment "evidenced the legislature's intent that the procedures in Article II - including the filing of a neglect petition - must be complied with before a court can place a delinquent minor 15 or older in the guardianship of the Department on the basis of neglect." As K.D. and the County argue, to find such a requirement, we must read the phrase "pursuant to Article II" to mean something well beyond the words themselves. The phrase must be interpreted to mean that the procedural requirements set forth in Article II for the filing of a neglect petition must be followed, including providing proper notice of a neglect petition to the parents of a delinquent minor 15 years or older, before a DCFS guardianship order may be entered.

K.D. and the County contend that the phrase "pursuant to Article II" should be read as providing a point of reference, not as providing a directive. The phrase should be read as part of

16

the entire clause in section 5-710(1)(a)(iv) and not in isolation. The clause read in its entirety provides an alternative to a neglect proceeding under Article II to place an older minor in the guardianship of DCFS. The alternative clause incorporates the "independent basis" standard contained in section 405/2-10(2) in Article II of the Act (705 ILCS 405/2-10(2) (West 2008)). This interpretation is consistent with the plain and ordinary meaning of the language in the section. See *In re R.L.S.*, 218 Ill. 2d 428, 433, 844 N.E.2d 22 (2006) ("When the statutory language is clear, it must be given effect without resort to other tools of interpretation.").

We agree with K.D. and the County that the reference to "pursuant to Article II" in section 5-710(1)(a)(iv) cannot be read as imposing the procedural requirements of Article II on the juvenile court before a DCFS guardianship order may be entered in the course of a sentencing hearing regarding a delinquent and neglected minor at least 15 years of age. We agree that if the legislature meant to require that a neglect petition be filed under the procedural requirements of Article II, it could easily and simply have said so. See *State of Illinois, Secretary of State v. Mikusch*, 138 Ill. 2d 242, 252, 562 N.E.2d 168 (1990) ("When the import of the original statutory language is clear, the court has declined to view an amendment as simply clarifying the legislature's intention."). "Generally, a material change in the language of an unambiguous statute creates a presumption ***

17

that the amendment was intended to change the law." *Mikusch*, 138 Ill. 2d at 252.

The 2008 amendment constituted a material change in the language of section 5-710(1)(a)(iv), which supports the circuit court's conclusion that the amendment changed more than simply the disqualifying age in the section. The interpretation supporting a change in the law offered by K.D. and the County is also consistent with the holding in *O.H.*, a decision each cites as supporting the circuit court's order in this case.

In *O.H.*, the Third District consolidated four cases involving juveniles: "the [juvenile] court appointed DCFS as guardian, sentenced the minor to a term of probation, and directed DCFS to place each in a residential facility." *In re O.H.*, 329 Ill. App. 3d at 256. DCFS challenged the orders, contending the circuit court "was without jurisdiction to require such placements." *In re O.H.*, 329 Ill. App. 3d at 256. *E.F.* was not cited in *O.H.*, though the author of *E.F.* joined in the decision in *O.H.* as the author of *O.H.* had joined in the decision in *E.F.* While the age of each of the four minors in *O.H.* was never stated, we can only surmise that each was under the age of 13, thereby making unnecessary a cite or discussion of *E.F.* With each of the minors in *O.H.* under the age of 13, the guardianship order fell within the express terms of section 5-710(1)(a)(iv) in existence at the time for the entry of a DCFS guardianship order without the need to file a neglect petition under Article II.

18

No. 1-09-2481

Based on our surmise, the argument DCFS urged in *O.H.* is much the same argument it presents here. DCFS took the position that the preamended section 5-710(1)(a)(iv) required the filing of a neglect petition even for minors under the age of 13, although the clear and plain language of the section provided otherwise. DCFS contends before us that the 2008 amendment to the section changed nothing following the decision in *E.F.*, except to increase the disqualifying age to 15.

As we held above, the lack of subject matter jurisdiction holding in *E.F.* did not turn on the absence of a neglect petition, but on the express provision in section 5-705(1)(a)(iv) then in existence, which precluded the juvenile court from entering a DCFS guardianship order, in the course of a sentencing hearing, for 16-year-old E.F. At the time *E.F.* was decided, a custody order regarding a minor age 13 or older could only be entered upon the filing of a neglect petition under Article II of the Act. Thus, based on the actual holding in *E.F.,* the circuit court lacked subject matter jurisdiction because E.F.'s age was above the disqualifying age in the 2001 version of section 5-710(1)(a)(iv), which limited the "courts' ability to award custody of certain minors to DCFS under the Act." *In re E.F.*, 324 Ill. App. 3d at 176.

The clear import of *E.F.* and the holding in *O.H.* render unavailing the claim by DCFS that *A.H.* requires a neglect petition under Article II to vest jurisdiction on the circuit

19

court before a guardianship order may be entered.  In *E.F.*, had the minor been under age 13 at the time of sentencing, no neglect petition would have been necessary; in *O.H.*, the absence of neglect petitions regarding any of the four minors did not deprive the circuit court of subject matter jurisdiction to enter the guardianship orders because "a different section of the Juvenile Court Act dealing with minors who have been adjudicated delinquent [was involved]."  *In re O.H.*, 329 Ill. App. 3d at 260-61.

Contrary to DCFS's broad reading of *A.H.*, it does not stand for the proposition that a neglect petition must be filed to vest a court with subject matter jurisdiction before it may enter a DCFS guardianship order.  The language in *A.H.* quoted by DCFS, that "Proceedings under the Act are initiated by the filing of a petition for adjudication of wardship with the court pursuant to section 2-13 [of the Act]" (*A.H.*, 195 Ill. 2d at 417), cannot supplant the authority granted the circuit court in the 2008 version of section 5-710(1)(a)(iv).

We agree with K.D. and the County that DCFS in this case seeks to "insert a requirement into 705 ILCS 405/5-710(1)(a)(iv) that simply does not exist."  The absence of a neglect petition in the proceeding below did not deprive the circuit court of subject matter jurisdiction to enter the DCFS guardianship order involving K.D.  As the supreme court noted in a different context, it is the best interests of the minor that drives the

20

No. 1-09-2481

circuit court's determination under the Act. *In re A.H.*, 195 Ill. 2d at 421 ("the court must make a best interests determination, though not of the kind required at the temporary custody hearing").

We hold the 2008 amendment vested discretion in the circuit court to place a delinquent minor, age 15 or older, in the guardianship of DCFS when a finding of neglect, independent of the facts underlying the delinquency petition, is supported by the record. A circuit court need not look to Article II before acting in the best interests of a delinquent minor, already a ward of the court, in deciding sentencing conditions. Contrary to DCFS's claim, as evidenced by the instant case, as a child approaches adulthood, the parents of a minor, age 15 or older, may be less inclined to exercise parental control. Notice beyond that provided by the filing of a delinquency petition is not statutorily required for minors under the age of 15; we see no reason to require more when the minor reaches or is above that age.

The circuit court complied with the provisions of section 5-705(1)(a)(iv) in finding an independent basis of neglect outside the context of the filing of the neglect petition and acted within its authority in entering a DCFS guardianship order.

                                Due Process

DCFS's final attempt to overturn the guardianship order entered by the circuit court below rests on its contention, as

21

framed in its reply brief, that to uphold the DCFS guardianship order in this case would trample upon the due process rights of parents of minors similarly situated to K.D: "The strained reading of section 5-710(1)(a)(iv) proposed by K.D. and the People *** would raise serious constitutional concerns that the legislature surely did not intend."

No one questions that a minor's parents have a constitutional due process right to receive adequate notice of a juvenile proceeding based on the United States Supreme Court decision of *In re Gault*, 387 U.S. 1, 33-34 (1967). Nor does DCFS question that adequate notice of the delinquency proceedings was provided to K.D.'s parents. Nonetheless, DCFS suggests that the absence of a separate or second notice to the parents, before a finding of an independent basis for neglect may be made, runs afoul of due process.

*E.F.* and *O.H.* read together make clear that DCFS may no longer dispute that a minor of below a certain age, made a ward of the court in a delinquency proceeding, may be placed in the guardianship of DCFS without the filing of a neglect petition. Had the minor in *E.F.* been under the age of 13, no neglect petition would have been required to impose a DCFS guardianship order under the express terms of section 5-710(1)(a)(iv) in existence in 2001; that is precisely the holding in *O.H.* Thus, the parents of such a minor would receive no separate notice of a neglect proceeding under Article II before a DCFS guardianship

22

order could be imposed in a delinquency proceeding. DCFS does not claim that a neglect finding under those circumstances "would raise serious constitutional concerns."

DCFS fails to tell us why under its analysis, a constitutional claim arises when the delinquent minor reaches the age of 15, under the 2008 version of section 5-710(1)(a)(iv), but not before. We are unpersuaded that a second notice of a proceeding involving an allegation of parental neglect is essential to pass constitutional muster. In the absence of any supporting authority, we find no reason to address further the contention by DCFS that a different constitutional rule applies to minors at least 15 years of age than applies to minors under that age.

CONCLUSION

We affirm the circuit court's order placing the delinquent 16-year-old minor K.D. in the guardianship of DCFS, even though a neglect petition regarding K.D. was never filed. We hold section 5-710(1)(a)(iv) of the Act, as amended in 2008, vests the circuit court with subject matter jurisdiction to place a minor in the guardianship of DCFS on a finding of neglect when the neglect finding is based on facts independent of those underlying the delinquency petition. The social investigative report submitted to the circuit court found that neither parent was able to care for K.D. The circuit court properly found K.D. to be neglected and placed him in the guardianship of DCFS as a condition of his

No. 1-09-2481

probation.

Affirmed.

JUSTICE CAHILL, dissenting

I respectfully dissent. There is no question that the various requirements of the Juvenile Court Act can appear to be counter-intuitive and not in the best interests of the child when viewed from the trial court trenches. That is what happened here. An able, thoughtful trial judge believed the DCFS interpretation of the Act impeded his ability to act in the best interests of the child before him. He proceeded to interpret the Act in such a way that allowed him to enter a finding of neglect without the parents being notified or made a party to the proceeding. The facts of this case may be the exception that should be allowed by the rule, but the notice and hearing requirements of the statute are rooted in parental rights that have been held to be fundamental and of Constitutional dimension. It is for the Legislature to limit them, and the limitation should be clear and beyond dispute. That is the opinion of our Attorney General in this case, arguing on behalf of DCFS. I agree, and would reverse.