*In re* SEAN A., a Minor (The Department of Children and Family Services, Appellant).

Third District   No. 3—03—0861

Opinion filed June 29, 2004.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Patricia Rosen (argued), Assistant Attorney General, of counsel), for appellant.

Edward Danner, State's Attorney, of Lewistown (Pamela Connell, Assistant State's Attorney, and Lawrence M. Bauer and Terry A. Mertel (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellee Fulton County.

Jeff L. Neigel (argued), of Sebo, Clark & Neigel, of Canton, guardian *ad litem*.

JUSTICE O'BRIEN delivered the opinion of the court:
The appellant, the Department of Children and Family Services

(DCFS), brings this interlocutory appeal from an order of the trial court granting temporary custody of the minor, Sean A. (Sean), to the DCFS and ordering the DCFS to place Sean in an appropriate residential placement. On appeal, the DCFS argues that the trial court erred when it ordered the DCFS to place Sean in residential treatment after it determined that the DCFS should take temporary custody of Sean. The guardian *ad litem* (GAL), on behalf of Sean, argues that this court does not have jurisdiction to hear this appeal. After a careful review of the record, we find: (1) appellate jurisdiction has been properly invoked pursuant to Supreme Court Rule 306(a)(5) (166 Ill. 2d R. 306(a)(5)); and (2) the trial court had the authority to order the DCFS to place Sean in residential treatment after it ruled that the DCFS should take temporary custody of him. Therefore, we affirm.

## I. FACTS

### A. Background

On September 18, 2003, the State filed a delinquency petition with regard to 14-year-old Sean. A detention hearing was held that same day. At the hearing, Sean stipulated that there was probable cause to believe that he was delinquent and that it was a matter of immediate and urgent necessity for his protection that he be detained.

The trial court noted that the State had also filed a petition alleging that Sean was a neglected minor and that there had been a pending case against Sean in McDonough County. In the one-count neglect petition, the State alleged that Sean was neglected because he was not receiving the proper care and support as necessary for his well-being or, in the alternative, that he was abandoned by his mother. The State alleged that Sean's mother blamed Sean for the family's problems, that she had repeatedly contacted professionals involved in the case and stated that she wished to surrender her parental rights, and that she failed to fully cooperate with service providers.

At the conclusion of the detention hearing, the trial court entered an order finding probable cause to believe that Sean was delinquent and ordered that he be held in the Mary Davis home for seven days. It also ordered the DCFS to procure a residential placement for Sean during that seven-day period and set a shelter care hearing at the end of that period.

On September 25, 2003, the trial court held a status hearing on the delinquency petition and a shelter care hearing on the neglect petition. At the combined hearing, the State asked the trial court to place Sean in the temporary custody and guardianship of the DCFS. The DCFS did not oppose that request. However, the DCFS opposed any request that it be ordered to make a specific placement of Sean.

The trial court found probable cause that Sean was neglected and that there was an immediate and urgent necessity that he be placed in the temporary custody of the DCFS. It then ordered that the DCFS place Sean in residential treatment after reviewing Sean's mental health records and taking judicial notice of a prior case involving Sean in McDonough County.

The DCFS objected to the trial court's order, which had placed Sean in the custody of the DCFS and additionally required a specific placement for Sean. It argued that the court only had two alternatives after finding that Sean should be placed in temporary custody: (1) it could choose a specific placement; or (2) it could place Sean in the custody of the DCFS and let the DCFS choose where Sean was placed.

The trial court rejected the DCFS' argument. It ruled that it had the statutory authority to appoint the DCFS custodian of Sean and order that Sean be placed in a residential treatment center. The trial court noted that such an order was necessary in this case based on Sean's unmet mental health needs.

On December 4, 2003, this court granted the DCFS' petition for leave to appeal pursuant to Supreme Court Rule 306(a)(5). 166 Ill. 2d R. 306(a)(5).

### B. Relevant Statutes

Supreme Court Rule 306 provides, in relevant part:

"(a) Orders Appealable by Petition. A party may petition for leave to appeal to the Appellate Court from the following orders of the trial court:

\* \* \*

(5) from interlocutory orders affecting the care and custody of unemancipated minors, if the appeal of such orders is not otherwise specifically provided for elsewhere in these rules[.]" 166 Ill. 2d R. 306(a)(5).

Section 2—10 of the Juvenile Court Act of 1987 (705 ILCS 405/ 1—1 et seq. (West 2002)) provides, in relevant part:

"§ 2—10. Temporary custody hearing. At the appearance of the minor before the court at the temporary custody hearing, all witnesses present shall be examined before the court in relation to any matter connected with the allegations made in the petition. \*\*\*

(2) \*\*\* If it is consistent with the health, safety and best interests of the minor, the court may also prescribe shelter care and order that the minor be kept in a suitable place designated by the court or in a shelter care facility designated by the Department of Children and Family Services or a licensed child welfare agency \*\*\*. \*\*\* If the minor is ordered placed in a shelter care facility of

the Department of Children and Family Services or a licensed child welfare agency, the court shall, upon request of the appropriate Department or other agency, appoint the Department of Children and Family Services Guardianship Administrator or other appropriate agency executive temporary custodian of the minor and the court may enter such other orders related to the temporary custody as it deems fit and proper, including the provision of services to the minor or his family to ameliorate the causes contributing to the finding of probable cause or to the finding of the existence of immediate and urgent necessity." 705 ILCS 405/2—10(2) (West 2002).

## II. ANALYSIS

### A. Jurisdiction

■ We will first address the issue of appellate jurisdiction. The GAL argues that this court improperly allowed the DCFS' petition for leave to appeal pursuant to Supreme Court Rule 306(a)(5). 166 Ill. 2d R. 306(a)(5). Specifically, the GAL argues that appeals arising under the Juvenile Court Act (705 ILCS 405/1—1 *et seq.* (West 2002)) (Act) are specifically provided for by Supreme Court Rules 660 and 662. 134 Ill. 2d Rs. 660, 662. Since neither of those specific rules governing juvenile cases pertains to the facts of this case, the GAL claims that the DCFS cannot attempt to obtain appellate jurisdiction over this interlocutory appeal by means of Supreme Court Rule 306(a)(5), a general rule relating to appeals. 166 Ill. 2d R. 306(a)(5).

Except where a supreme court rule provides for an interlocutory appeal, the appellate court has jurisdiction to review only final judgments. *In re J.N.*, 91 Ill. 2d 122, 435 N.E.2d 473 (1982).

We have jurisdiction to review this case pursuant to Supreme Court Rule 306(a)(5). 166 Ill. 2d R. 306(a)(5). The GAL correctly notes that jurisdiction in this case cannot be invoked under Supreme Court Rule 660 or 662. See 134 Ill. 2d R. 660 (appeals from final judgments); 134 Ill. 2d R. 662 (appeals from cases brought under the Act that are predispositional). However, we fail to see how the lack of jurisdiction under those rules bars jurisdiction pursuant to Supreme Court Rule 306(a)(5). 166 Ill. 2d R. 306(a)(5).

The language of Supreme Court Rule 306(a)(5) specifically pertains to appeals from interlocutory orders affecting the care and custody of unemancipated minors, *"if the appeal of such orders is not otherwise specifically provided for elsewhere in these rules."* (Emphasis added.) 166 Ill. 2d R. 306(a)(5). This is the appeal of an unemancipated minor whose interlocutory order is not provided for elsewhere in the rules.

The GAL argues that a fair reading of the supreme court rules together would be that not every interlocutory order under the Act

may be appealed from by leave or by right. That may be a fair reading of the rules. However, the language of Supreme Court Rule 306(a)(5) makes it clear that a reviewing court has jurisdiction to hear the appeal of an interlocutory order that affects an unemancipated minor. See 166 Ill. 2d R. 306(a)(5). To hold otherwise would be to distort the plain meaning of the rule. Accordingly, the DCFS' petition for leave to appeal the trial court's temporary custody order was proper pursuant to Supreme Court Rule 306(a)(5). 166 Ill. 2d R. 306(a)(5).

## B. Temporary Custody Hearing

■ The DCFS argues that the trial court erred in ordering it to place Sean in residential treatment after the court had granted it temporary custody over Sean. Specifically, the DCFS argues that once a minor has been temporarily committed to the custody of the Department, that agency has the sole discretion to determine the proper type of placement for that child pursuant to section 2—10 of the Act. 705 ILCS 405/2—10 (West 2002).

### 1. Statutory Interpretation

Section 2—10 of the Act provides that after hearing testimony in a temporary custody hearing, the trial court may, consistent with the health, safety and best interests of the minor, prescribe shelter care and order that the minor be kept in a suitable place designated by the court or in a shelter care facility designated by the DCFS. 705 ILCS 405/2—10(2) (West 2002).

"If the minor is ordered placed in a shelter care facility of the Department of Children and Family Services or a licensed child welfare agency, the court shall, upon request of the appropriate Department or other agency, appoint the Department of Children and Family Services Guardianship Administrator or other appropriate agency executive temporary custodian of the minor *and the court may enter such other orders related to the temporary custody as it deems fit and proper, including the provision of services to the minor or his family to ameliorate the causes contributing to the finding of probable cause or to the finding of the existence of immediate and urgent necessity.*" (Emphasis added.) 705 ILCS 405/2—10 (West 2002).

Here, the DCFS' argument centers around the first portion of section 2—10. 705 ILCS 405/2—10(2) (West 2002). That section states that if the trial court prescribes shelter care it must order that the minor be kept in a suitable place designated by the court *or* in a shelter care facility designated by the DCFS. 705 ILCS 405/2—10(2) (West 2002). However, the latter part of section 2—10 specifically provides that if the court appoints the DCFS temporary custody of the minor, the court still retains the power to "enter such other orders related to

the temporary custody as it deems fit and proper, including the provision of services to the minor or his family to ameliorate the causes contributing to the finding of probable cause or to the finding of the existence of immediate and urgent necessity." 705 ILCS 405/2—10(2) (West 2002).

While the DCFS acknowledges that section 2—10 of the Act contains this latter provision, it argues: (1) when the legislature authorized the courts to enter "such other orders" relating to temporary custody as it deemed proper, it clearly was referring to orders *other* than the temporary custody order itself; and (2) the general grant of authority given in this provision is limited to the provision of ancillary social services and it should not be interpreted as a modification of the earlier provision dealing with temporary custody orders.

We are not persuaded. Statutes should be given their plain and ordinary meaning. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 732 N.E.2d 528 (2000). A plain reading of the statute indicates that the legislature vested the trial court with authority to make additional orders related to the temporary custody of the minor, even after the trial court awarded the DCFS temporary custodian of the minor. Nowhere in the statute is it evident that the legislature intended that these other orders be unrelated to the temporary custody order itself or that they should be limited to ancillary social services. Courts should not, under the guise of statutory construction, add requirements or impose limitations that are inconsistent with the plain meaning of the statute. *Nottage v. Jeka*, 172 Ill. 2d 386, 667 N.E.2d 91 (1996).

### 2. Illinois Supreme Court Precedent

Our supreme court has reviewed the power of a trial court in temporary custody proceedings on several occasions. See *In re A.H.*, 195 Ill. 2d 408, 748 N.E.2d 183 (2001); *In re Lawrence M.*, 172 Ill. 2d 523, 670 N.E.2d 710 (1996). In *In re A.H.*, the trial court granted temporary custody of the minor to the DCFS with the right to place him. The DCFS placed him in foster care. After the GAL became aware that the minor was being beaten in foster care, the trial court held a hearing and ordered that the minor be removed from the home. *In re A.H.*, 195 Ill. 2d at 413-14, 748 N.E.2d at 188. On appeal, the DCFS argued that the trial judge had no authority to circumvent the agency's administrative processes and order that the minor be removed from an individual's foster care.

The supreme court found that section 2—10 of the Act allowed the trial court to enter such orders related to the temporary custody as

the court deemed fit and proper if the minor is ordered placed in a DCFS shelter care facility. *In re A.H.*, 195 Ill. 2d at 419, 748 N.E.2d at 190; 705 ILCS 405/2—10 (West 2002). Therefore, the supreme court held that these "other orders relat[ing] to the temporary custody" of the minor were not limited to providing ameliorative services and that the trial court had the authority to enter an order removing the minor from temporary foster care without having to hold another temporary custody hearing. *In re A.H.*, 195 Ill. 2d at 420, 748 N.E.2d at 191.

The supreme court also considered the powers of a trial court in temporary custody hearings in *In re Lawrence M.*, 172 Ill. 2d 523, 670 N.E.2d 710 (1996). In that case, our supreme court held that the portion of section 2—10(2) of the Act which authorized a trial court to enter such other orders relating to the temporary custody as it deems proper, including the provision of services to the minor or his family, authorized the trial court to enter orders requiring the DCFS to provide and pay for in-patient drug treatment services for a mother whose addiction had caused or contributed to the minor's placement in shelter care. *In re Lawrence M.*, 172 Ill. 2d at 529-30, 670 N.E.2d at 714; 705 ILCS 405/2—10(2) (West 2002).

It is clear that our supreme court has held that a trial court has broad authority at a temporary custody hearing to control the custody of a minor and the services given to him or his parents, even if the DCFS has been granted temporary custody of the minor. See *In re A.H.*, 195 Ill. 2d 408, 748 N.E.2d 183 (2001); *In re Lawrence M.*, 172 Ill. 2d 523, 670 N.E.2d 710 (1996). Further, a literal reading of section 10 of the Act indicates that the trial court has been given this authority by the legislature. 705 ILCS 405/2—10(2) (West 2002).

Here, the trial court found that placement of Sean in a residential facility was proper based on its concerns about his mental health and on information about a juvenile case involving Sean in McDonough County. The trial court therefore had the authority, under section 2—10 of the Act, to direct the DCFS to place Sean in residential treatment, even after it had awarded temporary custody of Sean to the DCFS. See 705 ILCS 405/2—10(2) (West 2002).

Accordingly, the judgment of the circuit court of Fulton County is affirmed.

Affirmed.

BARRY and SCHMIDT, JJ., concur.