2024 IL App (2d) 240229-U
No. 2-24-0229
Order filed October 15, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In* re MARRIAGE OF JESSICA JONES, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19-D-1953 |
| | ) | |
| MARTIN JONES, | ) | Honorable |
| | ) | Rhonda Bruno, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Trial court erred in order appointing parenting coordinator to the extent that order purported to establish a different standard of review for trial court review of the decisions of the parenting coordinator and that it ordered that the parties were waiving their due process rights but order otherwise complied with provisions of Illinois Supreme Court Rule 909 (eff. May 24, 2023); reviewing court lacked jurisdiction over issues not involving the care or custody of unemancipated minors.

¶ 2                                    I. INTRODUCTION

¶ 3   The instant appeal arises out of litigation concerning the dissolution of the marriage of respondent, Martin Jones, and petitioner, Jessica Jones. Two children were born of the marriage. Respondent moved the trial court to appoint a parenting coordinator. Respondent now appeals the

order of the circuit court of Lake County appointing a parenting coordinator and defining its role. Respondent contends that, in the order making that appointment, the trial court exceeded its authority. For the reasons that follow, we affirm in part, vacate in part, dismiss in part, and remand with directions.

¶ 4                                        II. BACKGROUND

¶ 5     The parties entered into an agreed parenting plan on January 28, 2022, in which they agreed to "share parenting responsibilities for the minor children." A judgment for dissolution of marriage was entered on February 3, 2023. On August 18, 2023, respondent moved for the entry of an order appointing a parenting coordinator (see Ill. S. Ct. R. 909 (eff. May 24, 2023); 19th Judicial Cir. Ct. R. 4-3.20 (March 11, 2024)). A hearing was held on respondent's motion on March 12, 2024.

¶ 6     No court reporter was present at the hearing, and the parties submitted an agreed statement of facts (Ill. S. Ct. R. 323(d) (eff. July 1, 2017)). Respondent's attorney asked the trial judge if she "had her own order," and the trial judge indicated "that she used the standard order used by all parenting coordinators in Lake County." The guardian *ad litem* (GAL) agreed that the "order presented by the proposed parenting coordinator was the same or similar one to the one he uses and is used by the other parenting coordinators in Lake County." The GAL added that "the proposed parenting coordinator *** would not accept the appointment if the order did not conform to the one used by Lake County parenting coordinators."

¶ 7     Respondent's counsel objected that the order required the parties to waive their right to complain to the Attorney Registration and Disciplinary Commission (ARDC) and that it allowed the parenting coordinator to act as an evaluator pursuant to section 604.10 of the Illinois Marriage and Dissolution of Marriage Act" (see 750 ILCS 5/604.10 (West 2022)). The trial court rejected these arguments. Respondent's counsel then objected that the order required the parties to waive

their due process rights. The GAL replied that the purpose of the waiver was to "help the parties by simplifying the process." Respondent's counsel asked why it "would not just say that." The trial judge stated that "the purpose of this section was that because the mediation and arbitration laws provided for certain due process rights and that a parenting coordinator was an informal process." She "was very clear that the section was not a blanket waiver of the rights of a party, that the parties were waiving their rights in the context of a parenting coordinator only." Respondent's counsel asked for a formal hearing with a court reporter, but the trial judge denied that request.

¶ 8       Respondent's counsel then reiterated his objection to the portion of the order that required the parties to waive their right to "lodge complaints about the parenting coordinator with any licensing or credentialing authority." Petitioner's counsel noted that the parenting coordinator was not representing the parties and that this provision served simply to prevent them from filing a complaint because they were unhappy with a decision of the parenting coordinator rather than to bar them from filing valid complaints. Respondent's counsel replied that attorneys acting as third-party neutrals (see Ill. R. Prof'l Conduct R. 2.4 (eff. Jan. 1, 2010)) are also bound by the Rules of Professional Conduct. The trial court then entered the parenting coordinator order (hereinafter "Order"), giving leave to respondent's counsel to memorialize his objections in a separate written order (the trial court entered an order with an attachment submitted by respondent listing his objections, which we deem sufficient to preserve the issues he now raises).

¶ 9       The Order set forth, among other things, the parenting coordinator's responsibilities as well as the procedures through which the parenting coordinator would interact with the parties (particular provisions will be set forth in detail as we discuss respondent's arguments). Respondent interposed a number of objections to the Order. He then sought leave to file an interlocutory appeal challenging the Order. See Ill. S. Ct. R. 306(a)(5) (eff. Oct. 1, 2020). We granted respondent's

request, and the parties have briefed the issues respondent raises.

¶ 10                                III. ANALYSIS

¶ 11     Before the trial court, respondent moved for the appointment of a parenting coordinator and the trial court did so. Parenting coordinators have been defined generally as "neutral third-party intermediaries who facilitate the resolution of conflicts related to custody and visitation between divorced or separated parents." Eric C. Surette, *Litigation of Custody Disputes Involving Use of Parenting Coordinators as Improper Delegation of Judicial Authority*, 31 A.L.R.7th Art. 9 (2017). "Typically, a parent coordinator assists litigants in reaching resolutions for disagreements pertaining to decisions involving children, such as their child's education, activities, and discipline." Kimberly T. Aquino, *Family Law- Letting Go and Stopping the Continuous Cycle of Litigation: Massachusetts Supreme Judicial Court Affirms Scope of Judicial and Limited Non-Binding Parent Coordinator Authority in Custody Cases of Minor Children*, 21 Suffolk J. Trial & App. Advoc. 424, 429 (2016). The use of parenting coordinators originated in the early 1990's (Marlene Eskind Moses & Beth A. Townsend, *Parenting Coordinators: The Good, the Bad and the Ugly*, familylawyermagazine.com, (October 5, 2020), https://familylawyermagazine.com/articles/parenting-coordinators-the-good-the-bad-and-the-ugly/ (last visited September 16, 2024))  and "has become a common practice across the country." Eric C. Surette, *Litigation of Custody Disputes Involving Use of Parenting Coordinators as Improper Delegation of Judicial Authority*, 31 A.L.R.7th Art. 9, § 2 (2017).

¶ 12     Legal regimes for parenting coordinators vary among the States:

"More than half of the states permit the appointment of parenting coordinators pursuant to a statute or court rule. Many other jurisdictions also use parenting coordinators, although

without specific statutory authority, and in such cases, the parenting coordinator's role is defined by agreement between the parties, a court order, or both."

Eric C. Surette, *Litigation of Custody Disputes Involving Use of Parenting Coordinators as Improper Delegation of Judicial Authority*, 31 A.L.R.7th Art. 9, § 2 (2017). In Illinois, our supreme court has promulgated Rule 909 (hereinafter "Rule") (Ill. S. Ct. R. 909 (eff. May 24, 2023)), "which establishes a statewide framework for courts to utilize 'parenting coordinators' to resolve minor issues causing conflict in family law cases." Illinois Courts, *Illinois Supreme Court Adopts New Rule Establishing Parenting Coordination Program,* https://www.illinoiscourts.gov/News/1247/Illinois-Supreme-Court-adopts-new-rule-establishing-parenting-coordination-program/news-detail/ (last visited September 16, 2024). Rule 909 defines "parental coordination," as "a child-focused alternative dispute resolution process conducted by a licensed mental health or family law professional, which combines assessment, education, case management, conflict management, dispute resolution, and decision-making functions." Ill. S. Ct. R. 909(b) (eff. May 24, 2023). The Rule authorizes the appointment of a parenting coordinator "when deemed in the best interests of the children," due to an array of enumerated circumstances, including, for example, the failure of coparents to cooperate and communicate, or "for such other reason as the court deems appropriate that does not exceed the authority under this Rule." Ill. S. Ct. R. 909(c) (eff. May 24, 2023).

¶ 13    Briefly stated, the Rule describes the role of the parenting coordinator as, among other things, "timely resolving conflicts that may arise concerning parenting plans ***." Ill. S. Ct. R. 909(b) (eff. May 24, 2023). In the face of those conflicts, the duties of the parenting coordinator include "facilitate[ing] the resolution of conflict between coparents" regarding their parenting plan, as well as "mediat[ing] and *mak[ing] recommendations* with respect to, disputes between the

coparents upon request of a coparent or court order." (Emphasis added.) Ill. S. Ct. R. 909(e) (eff. May 24, 2023). Once a recommendation by the parenting coordinator is made, the Rule requires the coparents to comply, "until and unless the court, after a hearing on the motion and any responses thereto, rules that the recommendations(s) at issue are either: (1) in contravention of the child(ren)'s best interests; or (2) outside the scope of the authority granted to the parenting coordinator under this Rule, the applicable local circuit court rule(s), or the court order appointing the parenting coordinator." Ill. S. Ct. R. 909(k) (eff. May 24, 2023).

¶ 14 The Rule authorizes specific recommendations by the parenting coordinator in a variety of potential areas of controversy, "including but not limited to (1) the time, place, and manner for the pickup or drop-off of the child(ren) ***; (2) disputes regarding *** educational and extracurricular activities" of the children, "including payment of expenses; (3) minor alterations of parenting time," as well as "other specific issues assigned *** by the court or agreed by the coparents that does not exceed the authority under this Rule." Ill. S. Ct. R. 909(f) (eff. May 24, 2023). The rule also imposes limitations, however, on the topics on which a parenting coordinator may make recommendations. A parenting coordinator may not make recommendations as to the allocation of parenting responsibilities for decision making, initial allocation of parenting time, relocation, establishing visitation by a nonparent, or "child support, spousal maintenance, or the allocation of property or debt of the marriage." Ill. S. Ct. R. 909(g) (eff. May 24, 2023).

¶ 15 Rule 909(h) requires a parenting coordinator to provide "recommendations in writing to the coparents within 14 days of the receipt of all information necessary to make a recommendation. The coparents may submit the recommendations to the court for entry as an agreed order." Ill. S. Ct. R. 909(h) (eff. May 24, 2023). If a coparent does not accede to the parenting coordinator's recommendations, the rule also sets forth the procedure to contest them by filing a motion for

review in the circuit court. The circuit court's review of the recommendations at issue is *de novo*. Ill. S. Ct. R. 909(l) (eff. May 24, 2023).

¶ 16    Finally, other issues related to the parenting coordinator are also addressed in the Rule. Communications with the parties are not confidential, and *ex parte* communication by the parenting coordinator with the court is explicitly forbidden. (Ill. S. Ct. R. 909(n) (eff. May 24, 2023)). The fees of the parenting coordinator may be apportioned by the court between the coparents based upon financial resources (Ill. S. Ct. R. 909(j) (eff. May 24, 2023)) or imposed upon an objecting coparent whose motion for review of recommendations results in substantial affirmance by the trial court. (Ill. S. Ct. R. 909(n) (eff. May 24, 2023)). Each circuit is authorized to adopt local rules for the conduct of parental coordination that are consistent with Rule 909, (Ill. S. Ct. R. 909(a) (eff. May 24, 2023)) and that ensure parenting coordinators are qualified. (Ill. S. Ct. R. 909(o) (eff. May 24, 2023)). Also, a parenting coordinator is granted access to nonpublic court records (Ill. S. Ct. R. 909(m) (eff. May 24, 2023)).

¶ 17    At issue in this appeal is whether the trial court exceeded its authority when it entered an order appointing a parenting coordinator. Respondent contends that, in several aspects, the trial court's Order does not comply with Illinois Supreme Court Rule 909 (eff. May 24, 2023) or Local Rule 4-3.20 of the Nineteenth Judicial Circuit. Respondent also asserts that the trial court erred in requiring him to waive his due process rights. Finally, respondent argues that the trial court erred by ordering the parties to waive their ability to report attorney misconduct to the ARDC and providing for shifting costs in the event a party filed such a grievance. We will address these issues in turn.

¶ 18                        A. Alleged Violations Supreme Court Rule 909

¶ 19    Respondent first contends that the trial court's order violates Illinois Supreme Court Rule

909 in a number of ways. First, he argues that paragraph 5d of the parenting coordinator order is erroneous to the extent that it empowers the parenting coordinator to render a "written decision" rather than make recommendations and that paragraph 21 compounds the error by stating the written decision "shall be received into evidence by the Court at a hearing in this matter." Second, he asserts that paragraph 6a exceeds the trial court's authority by granting the parenting coordinator the authority to choose medical providers. Third, respondent complains of paragraph 6k, which allows the parenting coordinator to "establish remedies to address a party's violation of Orders of the [trial court]." Fourth, respondent challenges paragraph 9, which requires the parties to provide financial information to the parenting coordinator when relevant. Fifth, respondent claims that paragraph 17 exceeds the trial court's authority in that it imposes a higher standard of review for trial court review of the parenting coordinator's decisions than is contained in Rule 909. Sixth, respondent posits that paragraph 18 is improper because it allows the parenting coordinator to make findings and decisions. Seventh, respondent contends that paragraph 19 erroneously attempts to extend the immunity typically granted to a mandated reporter to the parenting coordinator. Eighth and finally, respondent objects to paragraph 21, which states that the parties waive any hearsay objections to statements contained in a written report of the parenting coordinator.

¶ 20     Generally, supreme court rules are construed like statutes. *U.S. Bank, N.A. v. Dzis*, 2011 IL App (1st) 102812, ¶ 39. The same is true of local court rules. See *VC & M, Ltd. v. Andrews*, 2013 IL 114445, ¶ 30. Thus, our primary goal in construing such rules is to ascertain and give effect to the intent of their drafters. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 332 (2002). The best indicator of that intent is the plain language of the rule itself. *Id.* If the language is clear and unambiguous, we must apply it without the use of extrinsic aids of construction. *VC & M, Ltd.*, 2013 IL 114445, ¶ 30. The interpretation of a rule presents an issue of law subject to *de novo* review. *Id.*

¶ 21    Also, it is respondent's burden, as the appellant, to affirmatively establish error in the proceedings below. *In re Alexander R.*, 377 Ill. App. 3d 553, 557 (2007). Moreover, argument must be supported by adequate citation to authority and factual assertions must be substantiated with appropriate reference to the record. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). "A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented [citation], and it is not a repository into which an appellant may foist the burden of argument and research [citation]; it is neither the function nor the obligation of this court to act as an advocate or search the record for error [citation]." *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993). The failure to comply with these rules may result in the forfeiture of an argument. *In re Marriage of Sinha*, 2021 IL App (2d) 191129, ¶ 50. We now turn to respondent's particular arguments.

¶ 22                              1. Decisions vs. Recommendations

¶ 23    Respondent first argues that the trial court's Order was flawed in that paragraph 5d grants the parenting coordinator the authority to make decisions. He contends that this is inconsistent with both Illinois Supreme Court Rule 909 (Ill. S. Ct. R. 909 (eff. May 24, 2023)) and Local Court Rule 4-3.20 (19th Judicial Cir. Ct. R. 4-3.20 (March 11, 2024)). Paragraph 5d states, "The Parenting Coordinator shall issue a written decision." Further, paragraph 21 directs that such a decision "shall be received into evidence." According to respondent, Rule 909 does not authorize a parenting coordinator to make decisions, only recommendations.

¶ 24    Respondent asserts, "Nothing in either the Supreme Court Rule or the Local Rule provides authority for a parenting coordinator to make 'decisions.' " He adds that neither rule "provides authority for a parenting coordinator to make written findings of fact which are then automatically admissible in the trial court." But, Rule 909(b) expressly states:

" 'Parenting coordination' is a child-focused alternative dispute resolution process conducted by a licensed mental health or family law professional, which combines assessment, education, case management, conflict management, dispute resolution, and *decision-making functions*. \*\*\* The parenting coordinator assists coparents engaged in high-conflict coparenting by:

\*\*\*

(4) timely resolving conflicts that may arise concerning parenting plans in order to reduce the amount of damaging conflict between coparents to which children are exposed and diminish a pattern of unnecessary relitigation about child-related issues." (Emphasis added.) Ill. S. Ct. R. 909(b) (eff. May 24, 2023).

Hence, Rule 909(b) empowers a parenting coordinator to "conduct[]" "decision-making functions." Additionally, the rule specifically contemplates a parenting coordinator "resolving conflicts."

¶ 25    Moreover, to the extent Rule 909 speaks of "recommendations," it is clear that the so-called "recommendations" are more than mere suggestions. Rule 909(d) states, "The coparents shall comply with the recommendation(s) made by the parenting coordinator until and unless the court" determines they are not in the best interests of the minors or beyond the parenting coordinator's authority. Ill. S. Ct. R. 909(d) (eff. May 24, 2023). In this case, paragraph 15 of the Order provides, "Decisions of the Parenting Coordinator are immediately effective." Paragraph 16 adds, "Either party may petition the Court to review a decision of the Parenting Coordinator." We see little difference between a "recommendation" with which a party must immediately comply and a "decision" that is "effective immediately"—either being subject to judicial review. That is, the "decisions" contemplated in the order are the same sort of disposition as the "recommendation"

described in Rule 909.

¶ 26    In his reply brief, respondent attempts to avoid this conclusion by pointing to the dictionary definitions of "decision" and "recommendation." Black's Law Dictionary (11th ed. 2019). "However, it is unnecessary to resort to dictionary definitions where a statute itself defines a term." *Hobby Lobby Stores Inc. v. Sommerville*, 2021 IL App (2d) 190362, ¶ 30; see also *People v. Chapman*, 2012 IL 111896, ¶ 24 ("When a statute contains a term that is not specifically defined, it is entirely appropriate to look to the dictionary to ascertain the plain and ordinary meaning of the term."). Thus, as Rule 909 explains clearly what it means by "recommendation," we have no occasion to consult a dictionary. As noted, that explanation is consistent with the trial court's use of "decision" in the parenting coordinator order. Respondent also points out that paragraph 18 of the order refers to "decision" and "recommendation" separately, indicating they are different entities. We decline to draw such an inference, because, as explained above, the express definition of "recommendation" in Rule 909 is consistent with the use of the term "decision" as used in the parenting coordinator order. Respondent's arguments on this point are not well-founded.

¶ 27    In an apparently related argument, respondent observes that Rule 909(i) prohibits a parenting coordinator from "serving as a court's professional evaluator pursuant to section 604.10 of the Illinois Marriage and Dissolution of Marriage Act" (see 750 ILCS 5/604.10 (West 2022)) and then leapfrogs to an invitation to this court to rule on objections that might be made to the admissibility of the parenting coordinator's recommendations at a hearing that might be brought to review recommendations that might be in dispute in the future. Before proceeding further, we must consider our jurisdiction over this issue. *In re Estate of York*, 2015 IL App (1st) 132830, ¶ 27 ("The Illinois Supreme Court has emphasized that courts of review have an independent duty to consider jurisdiction even if a jurisdictional issue is not raised by the parties."). Supreme Court

Rule 306(a)(5) grants us jurisdiction over, *inter alia*, interlocutory orders that affect the "care and custody of or the allocation of parental responsibilities for unemancipated minors ***." Ill. S. Ct. R. 306(a)(5) (eff. Oct. 1, 2020); *In re Guardianship of J.D.*, 376 Ill. App. 3d 673, 680 (2007). Generally, a reviewing court "has jurisdiction to hear the appeal of an interlocutory order which affects an unemancipated minor." *In re Sean A.*, 349 Ill. App. 3d 964, 969 (2004). The future admissibility of the parenting coordinator's recommendations would have no effect on the care and custody of the minors involved in this case. Accordingly, we lack jurisdiction over this issue.

¶ 28                                    2. Medical Providers

¶ 29    Respondent next argues that paragraph 6a is beyond the authority granted the trial court by Rule 909 and an improper delegation of trial court authority. Paragraph 6a provides:

> "The Parenting Coordinator shall have authority to address non-major decisions affecting the minor children. Specifically, the Parenting Coordinator shall have authority to address the following:
>
>> a. Non-major medical decisions such as scheduling conflicts, selection of new medical providers, duration of service, routine medical decisions, sharing of information related to medical issues and the like."

We note that respondent's opening argument on this issue consists of a short, four sentence paragraph supported by a mention of *Stribling* by name but no citation to the material in that case upon which respondent relies. As such, we deem this issue forfeited. *Obert*, 253 Ill. App. 3d at 682. Moreover, respondent's forfeiture notwithstanding, we find his argument unpersuasive. Rule 909 specifically empowers a parenting coordinator to address "health and personal care issues." Ill. S. Ct. R. 909(f)(6) (eff. May 24, 2023). So, the purportedly improper delegation respondent complains of was authorized by law. *Stribling*, therefore, is inapposite; and we see nothing in

paragraph 6a of the Order that is outside the authority granted the trial court by Rule 909.

¶ 30                                   3. Remedies

¶ 31    Respondent next complains of paragraph 6k of the Order, which states that the parenting coordinator may "[e]stablish remedies to address a party's violation of Orders of the Court ***." Initially, we note that respondent advances only a cursory argument in his opening brief, supported solely by a citation to a general proposition of law. This issue is forfeited. *Obert*, 253 Ill. App. 3d at 682.

¶ 32                              4. Financial Information

¶ 33    Respondent next argues that paragraph 9 of the Order exceeds the trial court's authority by authorizing the parenting coordinator to require the parties to provide him or her with financial disclosures. Paragraph 9 states:

> "If a disputed issue involves a financial matter (e.g. registration for an extracurricular activity), the parties shall provide the Parenting Coordinator with requested financial disclosures so that the Parenting Coordinator can give adequate consideration to the financial component of the disputed issue (which may include a tax return or current Financial Affidavit with supporting documents required by local court rule)."

¶ 34    Respondent asserts that neither Rule 909 nor Local Rule 4-3.20 of the Nineteenth Judicial Circuit authorizes a "parenting coordinator to review personal financial information." This is flatly incorrect. Rule 909(f)(2) expressly allows a parenting coordinator to address "disputes regarding the extent and nature of the child(ren)'s participation in existing educational and extracurricular activities, including payment of expenses." Local Rule 4-3.20(h) states, "A Parenting Coordinator shall be authorized to request financial disclosures so that the Parenting Coordinator can give adequate consideration to the financial component of a disputed issue if deemed necessary (which

may include a tax return or current Financial Affidavit with supporting documents required by local court rule)." 19th Judicial Cir. Ct. R. 4-3.20(h) (March 11, 2024).[1]

¶ 35 We further note that paragraph 9 begins "If a disputed issue involves a financial matter ***" and gives "registration for an extracurricular activity" as an example of what financial information might be pertinent to. Thus, the parenting coordinator can only require the parties to produce financial information if it is relevant to something at issue within the scope of the parenting coordinator's duties. Respondent points out that pursuant to Rule 909(g)(5), a parenting coordinator may not address child support, maintenance, or the allocation of property or debt, and that the Illinois Marriage and Dissolution of Marriage Act expressly makes contributions for extracurricular activities a category of child support. 750 ILCS 5/505(a)(3.6) (West 2022). That is true. But in the event of a conflict, specific provisions control over general ones. *Village of Chatham v. County of Sangamon*, 351 Ill. App. 3d 889, 896 (2004). Hence, Rule 909(f)(2)'s

---

[1]We note that while Local Rule 4-3.20(h) expressly allows a parenting coordinator "to request financial disclosures so that the Parenting Coordinator can give adequate consideration to the financial component of a disputed issue" (19th Judicial Cir. Ct. R. 4-3.20(h) (March 11, 2024)), Rule 909 contains no such express authorization. However, it is also true that Rule 909 does not prohibit a parenting coordinator from obtaining such documents, assuming they are relevant to something at issue (Ill. S. Ct. R. 909(f)(6) (eff. May 24, 2023)). Rule 909(g)(5) does limit the scope of what such information might be relevant to by removing child support, maintenance, and matters concerning the division of property from the authority of the parenting coordinator; nevertheless, there are other issues (such as paying for extracurricular activities (see (Ill. S. Ct. R. 909(f)(2) (eff. May 24, 2023)) to which such information might be relevant.

specific directive concerning extracurricular activities controls over Rule 909(g)(5)'s general exclusion of child support from the scope of the parenting coordinator's authority. Respondent's arguments on this point are unavailing.

¶ 36                                             5. Standard of Review

¶ 37    Respondent next argues that paragraph 17 of the trial court's parenting coordinator order is erroneous in that it imposes a higher standard for judicial review of a decision (or recommendation) of the parenting coordinator than set forth in Rule 909. Paragraph 17 provides as follows:

> "Any party challenging a Parenting Coordinator decision must:
>
> a. Demonstrate to the Court that the decision exceeded the authority of the Parenting Coordinator;
>
> b. [Show the decision e]xceeds the jurisdiction of the Court;
>
> c. [Show the decision is] erroneous as a matter of law; or
>
> d. Prove by clear and convincing evidence that the Parenting Coordinator's decision was against the manifest weight of the evidence and contrary to the best interests of the child/children to which the decision is applicable."

The first three subparagraphs of paragraph 17—a, b, and c—are not addressed in respondent's argument.

¶ 38    However, in contrast to Paragraph 17d of the Order, Rule 909(l) plainly states that review by the trial court of the recommendations of the parenting coordinator for the resolution of the parties' dispute is *de novo* (Ill. S. Ct. R. 909(l) (eff. May 24, 2023)), and Local Rule 4-3.20(n)(3) does as well (19th Judicial Cir. Ct. R. 4-3.20(h) (March 11, 2024)). *De novo* review means that the reviewing court is "free to undertake its own assessment of the facts in relation to the issues."

*People v. Cosby*, 231 Ill. 2d 262, 271 (2008). In other words, when a court conducts *de novo* review, the court performs the same analysis that it would if it were resolving the dispute itself and owes no deference to the original ruling. See *People v. Avdic*, 2024 IL App (1st) 210848, ¶25.

¶ 39    On the other hand, the manifest weight standard *is* deferential to the ruling under review. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Best v. Best*, 223 Ill. 2d 342, 350 (2006). The policy behind that deference to decisions reviewed under the manifest weight standard is an acknowledgement that the finder of fact "is in the best position to observe the conduct and demeanor of the parties and witnesses and has a degree of familiarity with the evidence that a reviewing court cannot possibly obtain. A reviewing court, therefore, must not substitute its judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn." In re D.F., 201 Ill. 2d 476, 498–99 (2002).

¶ 40    Clearly, paragraph 17d is inconsistent with Rule 909(l). Accordingly, on review, the trial court is directed to redraft paragraph 17 so that it complies with Rule 909(l) and this disposition.

¶ 41                            6. "Findings" and "Decisions"

¶ 42    Respondent next objects to paragraph 18, which states, "No record need be kept by the Parenting Coordinator except for findings, decisions, and/or recommendations of the Parenting Coordinator." Respondent asserts that this paragraph "exceeds the [Trial] Court's authority under Rule 909 by allowing the Parenting Coordinator to make 'findings' and decisions.' " The rule does nothing of the sort; rather, it simply addresses what records need to be maintained by the parenting coordinator. Moreover, we have addressed the parenting coordinator's authority to make decisions earlier (*Supra* ¶ 21), and we will not revisit that issue here.

¶ 43                                    7. Immunity

¶ 44      Respondent next contests paragraph 19, which states, "The Parenting Coordinator shall be free to report knowledge of child abuse and have the immunity of a mandated reporter." Respondent objects to the latter portion of the paragraph, which extends mandated-reporter immunity to the parenting coordinator. Before proceeding further, we must consider our jurisdiction over this issue. *In re Estate of York*, 2015 IL App (1st) 132830, ¶ 27 ("The Illinois Supreme Court has emphasized that courts of review have an independent duty to consider jurisdiction even if a jurisdictional issue is not raised by the parties."). Supreme Court Rule 306(a)(5) grants us jurisdiction over, *inter alia*, interlocutory orders that affect the "care and custody of or the allocation of parental responsibilities for unemancipated minors ***." Ill. S. Ct. R. 306(a)(5) (eff. Oct. 1, 2020); *In re Guardianship of J.D.*, 376 Ill. App. 3d 673, 680 (2007). Generally, a reviewing court "has jurisdiction to hear the appeal of an interlocutory order which affects an unemancipated minor." *In re Sean A.*, 349 Ill. App. 3d 964, 969 (2004). The parenting coordinator's immunity contemplated by the trial court here would have at best a tangential effect on the care and custody of the minors involved in this case, particularly in light of 325 Ill. 2d 5/9 (West 2022)(speaking to immunity of permissive reporter ). Accordingly, we lack jurisdiction over this issue.

¶ 45                                  8. Hearsay Evidence

¶ 46      Respondent also complains of a provision in paragraph 21, which requires the parties to "waive any objections to the admissibility of hearsay statements contained" in the written decisions of the parenting coordinator. Aside from general mentions of Rule 909 and Local Rule 4-3.20 of the Nineteenth Judicial Circuit, respondent's argument is unsupported by legal authority. Accordingly, we deem this argument forfeited. *Obert*, 253 Ill. App. 3d at 682.

¶ 47                                B. Due Process

¶ 48    Respondent next contends that the trial court erred in ordering that, in paragraph 26, the parties waive their due process rights. Paragraph 26 states, in pertinent part, "For the purpose of dealing with the Parenting Coordinator, each party shall waive his or her constitutional due process and statutory rights which would be available in a formal court proceeding, mediation or arbitration." It continues, "The parties shall use an informal and alternate means of decision-making instead of litigation." "A procedural due process claim presents a legal question subject to *de novo* review." *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 201 (2009).

¶ 49    Respondent first argues, and we agree, that a constitutional right may be waived only by the person who possesses it. He adds that, "[i]n the absence of his knowing and voluntary consent, he cannot be ordered to waive his due process rights." A constitutional right may be waived. *People v. Peeples*, 155 Ill. 2d 422, 491 (1993). A waiver is a voluntary relinquishment of a known right. *People v. Morgan*, 385 Ill. App. 3d 771, 776 (2008). " 'Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.' " *People v. Johnson*, 75 Ill. 2d 180, 187 (1979) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). Thus, the trial court's attempt to effectuate a waiver of respondent's due process rights by fiat was misplaced.

¶ 50    The trial court should redraft this portion of its order accordingly.

¶ 51                                C. Immunity

¶ 52    Respondent next argues that the trial court should not have required the parties to "waive their immunity under Supreme Court Rule 775" (eff. Dec. 7, 2011). This rule immunizes all persons making complaints to the ARDC from "all civil liability." Ill. S. Ct. R. 775 (eff. Dec. 7, 2011); *Casamento v. Berendt*, 2018 IL App (2d) 180086, ¶ 17. Respondent objects to paragraph

25, to the extent it states, "The Court shall reserve jurisdiction to assess and allocate responsibility for paying the Parenting Coordinator's time and costs spent in responding to any grievance, or other claim or challenge arising from this order, including attorney's fees and costs incurred, if any." Respondent contends that imposing such costs would be in derogation of the immunity provided by Rule 775. He also objects to the following portion of paragraph 27: "The parties shall waive the right to lodge complaints about the Parenting Coordinator with any licensing or credentialing authority."

¶ 53    Initially, we lack jurisdiction over the issue respondent attempts to raise concerning paragraph 27. As explained above, Supreme Court Rule 306(a)(5) grants a reviewing court jurisdiction over interlocutory orders affecting the "care and custody of or the allocation of parental responsibilities for unemancipated minors ***." Ill. S. Ct. R. 306(a)(5) (eff. Oct. 1, 2020). Whether a party retains the right to make a complaint to ARDC or some other licensing authority, is not a matter affecting the care or custody of a minor. Thus, we will not consider this argument any further. Moreover, we note that respondent mentions paragraph 25 but offers no argument regarding that paragraph, accordingly we will not address this issue. *Obert*, 253 Ill. App. 3d at 682.

¶ 54                                        V. CONCLUSION

¶ 55    In light of the foregoing, we vacate the portion of the trial court's parenting coordinator order setting a higher standard judicial review of decisions of the parenting coordinator and the portion of the order decreeing the parties waive their due process rights. On remand, the trial court shall redraft these provisions to comply with Supreme Court Rule 909 and this disposition. We dismiss those portions of the appeal over which we lack jurisdiction. We otherwise affirm.

¶ 56    Affirmed in part; vacated in part; dismissed in part; cause remanded with directions.